IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DONALD CRIDER, )<br>)<br>Plaintiff, )<br>) Civil Action No. 4:20-cv-20<br>v. )<br>)<br>WAL-MART STORES )<br>EAST, LP d/b/a WALMART, )<br>WAL-MART, WALMART )<br>SUPERCENTER, and )<br>WAL-MART SUPERCENTER, )<br>)<br>Defendant. ) | |

## COMPLAINT & JURY DEMAND

Plaintiff, Donald Crider, by counsel, submits this Complaint and Jury Demand.  He complains against the Defendant, Wal-Mart Stores East, LP d/b/a Walmart, Wal-Mart, Walmart Supercenter, and Wal-Mart Supercenter ("Walmart") as follows:

### STATEMENT OF JURISDICTION AND VENUE

1. Subject-matter jurisdiction in this case is based on the existence of a federal question. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, et seq., as shown more fully in this Complaint.

2. For all times relevant to this pleading and up to the date of this pleading, Plaintiff was (and is) an adult man residing in Tippecanoe County, Indiana.

3. For all times relevant to this pleading and up to the date of this pleading, Walmart was an entity formed under the laws of Delaware, with its principal place of business in Arkansas, and registered with the Indiana Secretary of State to conduct business in the state of Indiana.  Walmart's sole general partner was WSE Management, LLC, formed

1

under the laws of Delaware and with its principal place of business in Arkansas, and registered with the Indiana Secretary of State to conduct business in the state of Indiana.

4. For all times relevant to this pleading and up to the date of this pleading, Walmart owned and operated a store in West Lafayette, Indiana called Walmart Supercenter (Store No. 2339) ("West Lafayette Walmart"), located in the Northern District of Indiana, Lafayette Division.

5. For all times relevant to this pleading and up to the date of this pleading, Walmart owned and operated a store in Frankfort, Indiana called Walmart Supercenter (Store No. 854) ("Frankfort Walmart") located in the Southern District of Indiana, Indianapolis Division.

6. Walmart has continuously been an "employer" engaged in an industry affecting interstate commerce and is an "employer" within the meaning of §§ 701(b) of Title VII, 42 U.S.C. § 2000e-(b).

7. All events or omissions giving rise to the following claims occurred in the West Lafayette Walmart or the Frankfort Walmart.

8. Venue is properly with this Court, pursuant to 28 U.S.C. § 1391(b)(2).

## PROCEDURAL HISTORY

9. The United States Equal Employment Opportunity Commission (the "EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Acts of 1964, as amended by Civil Rights Act of 1991.

10. Plaintiff filed a Charge of Discrimination with the EEOC in a timely manner, and otherwise complied with all prerequisites for filing claims under Title VII.

11. Following an investigation, on December 23, 2019, the EEOC dismissed Plaintiff's charge and issued him a notice of his rights providing that he had to initiate this lawsuit within 90 days of receipt of the notice. A true and accurate copy of that notice is attached as **Exhibit A**.

12. Plaintiff has timely filed this Complaint, within the period permitted by the EEOC's notice, the applicable statute of limitations, and has exhausted all administrative remedies available to him.

## ALLEGATIONS COMMON TO ALL CLAIMS

13. Beginning in the summer of 2018 and continuously to October 2019, Walmart has employed Plaintiff as a stockman. He was primarily responsible for stocking the shelves at Walmart's stores. Since October 2019, he has been employed at Walmart as a greeter. At all relevant times to this claim, Plaintiff was an "individual" and an "employee" within the meaning in Title VII, 42 U.S.C. § 2000e and 42 U.S.C. § 2000e-2

14. Save for the dates indicated below, Plaintiff worked at the West Lafayette Walmart.

15. Beginning in May 2019, Walmart began remodeling the Frankfort Walmart (the "Remodel").

16. In order to facilitate the Remodel, Walmart coordinated employees to travel from other stores and locations to come to Frankfort.

17. Plaintiff was selected to assist with the Remodel and carpooled there with other employees and a "Support Manager" from the West Lafayette Walmart named Jennifer.

18. Jennifer was one of Plaintiff's supervisors.

19. While working at the Frankfort Walmart, Jennifer began to refer to Plaintiff as "Big D," which Plaintiff construed at this time as a reference to his height.

20. Plaintiff worked night shifts at the Frankfort Walmart.

21. During the Plaintiff's shift, Walmart assigned an individual named Jose as the Night Assistant Manager.

22. As the Night Assistant Manager, Jose was one of Plaintiff's supervisors.

23. After about two weeks at the Frankfort Walmart, Jose began to make continuous, unsolicited, and unwelcome sexual advances and sexually harassed the Plaintiff.

24. These repeated, unwelcome, and unsolicited advances and harassment included but are not limited to:

    a. Verbal and visual references to Plaintiff's genitals;

    b. Requests for the Plaintiff to expose himself and his genitals;

    c. Requests to engage in sexual intercourse;

    d. Telling Plaintiff's coworkers that he wanted Plaintiff to "rape him;"

    e. Sending private messages to Plaintiff, including one suggesting he wanted to know why he was called "Big D;"

    f. Grazing Plaintiff's genitals above his clothing;

    g. Attempts to examine, or get near Plaintiff's genitals; and

    h. Talking about explicit sex acts and his sex life while around the Plaintiff.

25. During this time, Plaintiff routinely told Jose to stop and to leave him alone, to no avail.

26. After Jose admitted to the Plaintiff that he had said that he (Jose) wanted to be "raped" by him (Plaintiff), Plaintiff sought assistance from Jennifer.

27. When Plaintiff reported the sexual harassment to his immediate supervisor, Jennifer, Jennifer laughed and remarked something to the effect of "Jose is going to get Walmart sued one of these days."

28. Jennifer admitted to knowing about Jose's behavior, but stated that she would not take any action, and that she would not report Jose.

29. Plaintiff stated that he wanted to report Jose, but he was told by Jennifer that he was not allowed to make a report until their assignment to the Remodel had been completed, and they returned to the West Lafayette store.

30. Jennifer refused to intervene or take any action to Jose from engaging in the behavior noted above, at any point.

31. Eventually, around early August 2019, Plaintiff returned to the West Lafayette store and reported to Jennifer that he wanted to report Jose and asked for her assistance to make the report.

32. Jennifer became upset and stated that she might lose her job if Plaintiff made the report; she threatened him and told him that there would be "consequences" if he made the report.

33. Plaintiff, nevertheless, reported Jose through Walmart's internal reporting system, via a computer at the store.

34. After some time (~3 weeks), an unidentified Walmart official contacted Plaintiff and asked him to provide a statement online. Plaintiff went online and drafted a statement.

35. Plaintiff did not hear from anyone with Walmart after that point, and discovered only through his own diligence, that Walmart had dismissed his allegations.

36. After making the most recent complaint and up to the present, Plaintiff has faced retaliation and harassment from Jennifer and other West Lafayette Walmart supervisors for his report, including but not limited to:

    a. Loss in scheduled hours to work;

    b. Verbal yelling and assault;

    c. Disproportionate work assignments;

    d. Demerits, or other poor notations on performance reviews;

    e. Suggesting to Plaintiff during a performance review that he should quit his job; and,

    f. Assignment to areas of the West Lafayette Walmart that posed an unreasonable risk to his health.

37. Plaintiff has been informed that Jennifer has expressed an intention to either get Plaintiff to quit or to get him fired via unwarranted poor performance reviews.

## COUNT I: TITLE VII SEXUAL HARASSMENT & DISCRIMATION – HOSTILE WORK ENVIRONMENT

38. Plaintiff incorporates Paragraphs 1-37 as if they were stated fully herein.

39. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, prohibits an employer from making unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile or offensive work environment.

40. Walmart, by and through its employees and supervisors, including Jose, engaged in unlawful sexual harassment and discrimination against Plaintiff by engaging and exposing Plaintiff to unwelcome treatment including, but not limited to, the following:

    a. Unwelcome verbal and visual references to Plaintiff's genitals;

    b. Unwelcome requests for the Plaintiff to expose himself and his genitals;

c. Unwelcome requests by a supervisor to engage in sexual intercourse;

d. Telling coworkers that a supervisor wanted Plaintiff to "rape him;"

e. Sending private messages to Plaintiff, including one suggesting he wanted to know why he was called "Big D;"

f. Unwelcome grazing Plaintiff's genitals above his clothing;

g. Unwelcome attempts to examine, or get near Plaintiff's genitals;

h. Unwelcome statements from his supervisor about explicit sex acts and his sex life while around the Plaintiff;

i. Refusing to permit or delaying Plaintiff from reporting his supervisor's conduct;

j. Failing to conduct an investigation, or conducting an impartial, incomplete, or biased investigation;

k. Disregarding Plaintiff's requests that this action stop;

l. Threatening Plaintiff to dissuade him from making complaints;

m. Engaging in further retaliation, as described in Count II, and;

n. Walmart's continued refusal to prevent, address, correct, or dissuade its supervisors' conduct.

41. The effect of Walmart's actions complained above and throughout this Complaint has been to create, implement, perpetuate, foster, encourage, condone, and permit a hostile work environment, so pervasive and severe, that it has effectively altered the terms and conditions of Plaintiff's employment.

42. The purpose and effect of Walmart's sexual harassment has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect the terms, conditions, and privileges of his employment and his status as an employee.

43. Walmart's actions, by and through its employees and supervisors, including Jose and Jennifer, were taken with malice or reckless indifference to Plaintiff's legally protected rights.

44. As a direct and proximate result of Walmart's discriminatory actions, Plaintiff has suffered (and continues to suffer) a deprivation of his federal statutory rights, and sustained or incurred (and will continue to sustain and incur) great hardship, emotional distress, lost wages, medical expenses, attorney's fees, costs, and other consequential and special damages in an amount to be proven at trial.

**COUNT II: TITLE VII SEX HARASSMENT DISCRIMINATION - RETALIATION**

45. Plaintiff incorporates Paragraphs 1-44 as if they were stated fully herein.

46. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, prohibits employers from punishing employees for complaining about practices that violate Title VII.

47. Plaintiff reported violations of Title VII to Walmart.

48. Walmart, by and through its employees and supervisors, has punished Plaintiff for reporting these violations in several ways, including, but not limited to:

    a. Reducing his hours;
    b. Verbally yelling and assaulting him;
    c. Disproportionate work assignments;
    d. Giving him poor performance reviews;
    e. Suggesting during a performance review that he should quit his job; and
    f. Assigning him to work in areas of the West Lafayette Walmart that posed an unreasonable risk to his health.

49. Walmart's actions, by and through its employees and supervisors, including Jose and Jennifer, were with malice or reckless indifference to Plaintiff's legally protected rights.

50. As a direct and proximate result of Walmart's discriminatory actions, Plaintiff has suffered (and continues to suffer) a deprivation of his federal statutory rights, and sustained or incurred (and will continue to sustain and incur) great hardship, emotional distress, lost wages, medical expenses, attorney's fees, costs, and other consequential and special damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray that this Court grant the following relief:

a) Award Plaintiff full equitable relief for past and future losses resulting from the unlawful employment practices complained of herein, including, but not limited to, back pay and other compensatory damages as determined pursuant to Title VII;

b) Award Plaintiff full compensatory damages as determined for all losses suffered as a result of emotional pain, suffering, depression, anxiety, loss of enjoyment of life, humiliation, and other psychological and physiological symptoms and conditions, in amounts to be determined at trial;

c) Award full punitive damages allowed under the law;

d) Award Plaintiff reasonable attorney's fees, costs, and disbursements;

e) Grant a permanent injunction enjoining Walmart, its officers, management personnel, employees, agents, successors, and assigns and those acting in concert therewith from any conduct violating the rights of Plaintiff under Title VII;

f) Order Walmart to institute and carry out policies, practices, and programs that provide employment opportunities for all employees free from sexual harassment and retaliation and that eradicate the effects of Walmart's past and present unlawful practices; and,

g) Grant such further relief as the Court deems necessary and proper.

Respectfully submitted,

/s/ *Sarah N. Dimmich*
Sarah N. Dimmich, Atty. No. 23756-06
Tyler L. Jones, Atty. No. 34656-29
Stuart & Branigin LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN 47902-1010
E-Mail:  snd@stuartlaw.com
　　　　 tlj@stuartlaw.com
Telephone: (765) 423-1561
Facsimile: (765) 742-8175

## JURY DEMAND

Plaintiff demands trial by jury.

/s/ *Sarah N. Dimmich*
Sarah N. Dimmich, Atty. No. 23756-06

#1275829